[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12653
_____

D.C. Docket No. 4:11-cv-00010-RH-CAS


ACE PATTERSON,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(March 3, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether a consent order that a state prisoner not undergo chemical castration allows him to attack his eighteen-year-old convictions a second time, notwithstanding the statutory bar of successive petitions, 28 U.S.C. § 2244(b)(1). In 1998, a Florida jury convicted Ace Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery. The trial court sentenced him to life imprisonment and chemical castration. Patterson then filed several unsuccessful collateral attacks in state court and a petition for a writ of habeas corpus that the district court dismissed as untimely. In 2009, Patterson filed a motion to correct an illegal sentence, Fla. R. Crim. P. 3.800, on the ground that the trial court failed to comply with the statutory prerequisites for chemical castration. After the state and the victim's guardian ad litem consented to Patterson's motion, a Florida court granted it and ordered that he not undergo chemical castration. But the Florida court did not enter a new judgment or order commanding the Secretary of the Department of Corrections to imprison him. Patterson then filed another federal petition that attacked his convictions. The district court dismissed that petition as "second or successive." § 2244(b)(1). Patterson argues that the order that he not undergo chemical castration constitutes a new "judgment," 28 U.S.C. § 2254(b)(1), that makes his latest petition not second or successive under *Magwood v. Patterson*, 561 U.S. 320 (2010). But because Patterson is not "in custody pursuant to," § 2254(b)(1), the consent order that he

2

not undergo chemical castration, that order does not trigger a new round of federal collateral review. *See Magwood*, 561 U.S. at 332–33. We affirm the dismissal of Patterson's petition as second or successive.

## I. BACKGROUND

Ace Patterson is a prisoner in the custody of the Secretary of the Florida Department of Corrections. In 1997, he visited his cousin and his cousin's fiancée at their home in Madison County, Florida. There, the couple introduced Patterson to their eight-year-old daughter before she went to bed. Patterson ate dinner and spent time with the couple and then left for the night. But he later returned uninvited.

In the middle of the night, Patterson broke into his cousin's home and lifted his cousin's sleeping eight-year-old daughter out of her bed. He carried her outside, brought her to the woods, and raped her. When she tried to scream, Patterson gagged her by sticking his fingers down her throat. When she tried to escape, Patterson grabbed her leg, dragged her back into the dirt, and raped her again. After the assault, the girl found her way back home. Her parents awoke to the sound of their eight-year-old daughter knocking on the front door—crying, covered in dirt, missing a clump of hair, and covered in scratches and bruises. The medical examiners later discovered dirt in her vagina and severe vaginal lacerations.

3

In 1998, a jury convicted Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery. The Florida trial court sentenced him to 311 months of imprisonment for the burglary and kidnapping convictions and to consecutive sentences of life imprisonment and chemical castration for the sexual battery convictions. The sentencing form "committed [Patterson] to the custody of the Department of Corrections" and directed the Department to "keep and safely imprison" Patterson for the remainder of his life. A state appellate court later affirmed his convictions and sentences. *Patterson v. State*, 736 So. 2d 1185 (Fla. Dist. Ct. App. 1999).

Patterson then initiated a flurry of collateral attacks against his convictions, including four petitions for writs of habeas corpus in state court and an ethics complaint against the prosecutor who tried his case. His efforts failed, and a Florida appellate court warned him that "the filing of any further successive and/or frivolous petitions or appeals may result in the imposition of sanctions." *Patterson v. State*, 788 So. 2d 397 (Fla. Dist. Ct. App. 2001).

In 2006, Patterson filed his first federal petition for a writ of habeas corpus. He alleged that his convictions were secured in violation of the Due Process Clause of the Fourteenth Amendment, the Self-Incrimination Clause of the Fifth Amendment, and the right to effective assistance of counsel under the Sixth Amendment. The district court dismissed his petition as untimely. Ordinarily, that

4

decision would have brought closure to the victim of his crimes, who was by then eighteen years old.

Patterson then pursued a different line of attack. Instead of challenging his convictions, he challenged the portion of his sentence that required chemical castration. Patterson filed a motion to correct an illegal sentence, Fla. R. Crim. P. 3.800, on the ground that the trial court did not comply with the statutory prerequisites for chemical castration. The State of Florida and the guardian ad litem for the victim assented to Patterson's motion. With Patterson imprisoned for life, the prosecutor and guardian ad litem viewed chemical castration as a "moot point" and believed that contesting his motion was not worth "expos[ing] the victim to the painful remembrance of the Defendant's actions against her."

In 2009, the Florida trial court granted Patterson's motion in an order that stated, "[T]he Defendant shall not have to undergo [chemical castration] as previously ordered by the Court at his sentencing in the above styled matter." The 2009 order did not vacate Patterson's sentence and replace it with a new one. Nor did it direct the Department of Corrections to hold Patterson or perform any affirmative act.

After his success in state court, Patterson resumed his attack on his 1998 convictions in federal court. In 2011, he filed a second petition for a writ of habeas corpus, which again alleged that his convictions were secured in violation of the

5

Fifth, Sixth, and Fourteenth Amendments. A magistrate judge recommended dismissing Patterson's petition as second or successive because Patterson was "not in custody pursuant to" the 2009 order. The district court adopted that recommendation and dismissed Patterson's petition as second or successive.

A divided panel of this Court reversed. *Patterson v. Sec'y, Fla. Dep't of Corr.*, 812 F.3d 885 (11th Cir. 2016), *reh'g en banc granted, opinion vacated*, 836 F.3d 1358 (11th Cir. 2016). The panel concluded that Patterson's petition was not second or successive because Patterson was in custody pursuant to a new judgment—the order that he not undergo chemical castration. We vacated the panel opinion and ordered rehearing en banc. We appointed Professor Erica Hashimoto to represent Patterson throughout this appeal. We thank Professor Hashimoto for her excellent brief and oral argument in keeping with the highest tradition of the legal profession.

## II. STANDARD OF REVIEW

We review *de novo* whether a petition for a writ of habeas corpus is second or successive. *Stewart v. United States*, 646 F.3d 856, 858 (11th Cir. 2011).

## III. DISCUSSION

After a state prisoner has had a trial, a direct appeal, and an opportunity for collateral review in the state courts, he typically gets one, and only one, chance to collaterally attack his conviction in federal court. With exceptions not relevant

6

here, section 2244(b) prohibits a state prisoner from filing a "second or successive" habeas petition. 28 U.S.C. § 2244(b). This prohibition "is grounded in respect for the finality of criminal judgments." *Calderon v. Thompson*, 523 U.S. 538, 558 (1998). Finality, in turn, is essential to achieving the goals of our criminal justice system: "Deterrence depends upon the expectation that 'one violating the law will swiftly and certainly become subject to punishment, just punishment.' Rehabilitation demands that the convicted defendant realize that 'he is justly subject to sanction, that he stands in need of rehabilitation.'" *Engle v. Isaac*, 456 U.S. 107, 127 n.32 (1982) (quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441, 452 (1963); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 146 (1970)). Finality also "benefits the victim by helping [her] put the trauma of the crime and prosecution behind [her]." *Presnell v. Kemp*, 835 F.2d 1567, 1573 (11th Cir. 1988).

Whether a petition is second or successive depends on "the *judgment* challenged." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1278 (11th Cir. 2014). The judgment that matters for purposes of section 2244 is "the judgment authorizing the prisoner's confinement." *Magwood* , 561 U.S. at 332 (emphasis omitted) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005)). This conclusion follows from the text of the statute. Section 2244(b) refers to second or

7

successive petitions "under section 2254." 28 U.S.C. § 2244(b). And section 2254 governs petitions that challenge "the judgment of a State court" "pursuant to" which the prisoner is "in custody." *Id.* § 2254. Accordingly, the bar on second or successive petitions ordinarily prevents a prisoner from twice contesting the judgment authorizing his confinement. *See Burton v. Stewart*, 549 U.S. 147, 153 (2007).

A petition is not second or successive if it challenges a "new judgment" issued after the prisoner filed his first petition, *Magwood*, 561 U.S. at 324, but the new judgment must be a "judgment authorizing the prisoner's confinement." *Id.* at 332 (emphasis omitted) (quoting *Dotson*, 544 U.S. at 83). For example, in *Magwood*, the district court granted a prisoner's first habeas petition and vacated his sentence. *Id.* at 326. The state court then conducted a new sentencing hearing and entered a new judgment and sentence of imprisonment. *Id.* When the prisoner filed a second habeas petition, the Supreme Court held that it was not second or successive because the petition was the prisoner's *first* challenge to the new prison sentence. *Id.* at 339. Although the prisoner's second petition restated the same errors as his first petition, the errors he alleged were new because at the resentencing hearing, the state court heard and rejected the prisoner's arguments a second time. *Id.* And "[a]n error made a second time is still a new error." *Id.*

8

The district court correctly concluded that the only judgment that authorizes Patterson's confinement is the sentence entered in 1998. That judgment "committed [Patterson] to the custody of the Department of Corrections," and that commitment has never been vacated or replaced. Patterson challenged that judgment in his 2006 petition for a writ of habeas corpus.

When his first federal petition was dismissed as untimely, Patterson lost his one chance to obtain federal habeas review of his 1998 judgment. *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1353 (11th Cir. 2007). Because Patterson's 2011 petition challenges the 1998 judgment a second time, the district court correctly dismissed it as second or successive. The 2009 order that granted Patterson's uncontested motion to correct his sentence does not trigger a new round of federal review.

Our precedent in *Insignares* does not support Patterson's argument. Although Patterson and Insignares both filed successful motions to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a), the Florida trial court in *Insignares* went a step further: it also changed Insignares's term of imprisonment and "entered [a] corrected sentence and new judgment." 755 F.3d at 1277. This corrected sentence "committed [Insignares] to the custody of the Department of Corrections." Here, the Florida trial court never issued a new prison sentence—in writing or otherwise—to replace Patterson's 1998 sentence. The

9

2009 order bars the imposition of chemical castration, but it does not otherwise address the term of Patterson's imprisonment. In short, Insignares had an intervening "judgment authorizing [his] confinement," but Patterson does not. *Id.* at 1279 (emphasis omitted) (quoting *Magwood*, 561 U.S. at 332).

Patterson and the dissent contend that the 1998 sentencing form *and* the order that Patterson not undergo chemical castration must be read together to describe his conviction and current sentence accurately, *see* Dissenting Op. at 23–24, but the text of the governing statute makes clear that the only judgment that counts for purposes of section 2244 is the judgment "pursuant to" which the prisoner is "in custody." 28 U.S.C. § 2254; *see Magwood*, 561 U.S. at 332–33; *Burton*, 549 U.S. at 156. And Patterson is not in custody pursuant to the 2009 order because it does not authorize anything. *Magwood*, 561 U.S. at 332. Instead, it states only in the negative that Patterson "shall not have to undergo [chemical castration]." That the Florida Department of Corrections must read both forms together to determine the scope of Patterson's confinement does not transform the 2009 order into a judgment that authorizes Patterson's custody. The 1998 judgment is the only judgment that allows the Department to imprison Patterson. The 2009 order imposes no sentence and gives the Department no authority.

Patterson also argues that any order that alters a sentence necessarily constitutes a new judgment, but this argument is difficult to square with our

10

precedent that suggests that not all changes to a sentence create a new judgment. We have held that when a court corrects a clerical mistake, no new judgment arises for purposes of Federal Rule of Appellate Procedure 4(B)(1)(A). *See United States v. Portillo*, 363 F.3d 1161, 1165–66 (11th Cir. 2004). Although we have not applied this precedent in the context of second petitions, we reject the notion that the Antiterrorism and Effective Death Penalty Act, the "central purpose" of which "was to ensure greater finality of state and federal court judgments in criminal cases," *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1269 (11th Cir. 2004) (en banc), is more accommodating of untimely and successive petitions than Rule 4(b)(1)(A) is of untimely direct appeals. And, contrary to the dissent's assertion, Dissenting Op. at 25, because an order that corrects a clerical error likely would not create new judgment, a petitioner would not be entitled to a second round of habeas review. *See Magwood*, 561 U.S. at 331.

Recognizing that his suggested rule runs counter to *Portillo*, Patterson attempts to limit his test to whether a prisoner's sentence has *materially* changed, but this limitation still misses the point. The relevant question is not the magnitude of the change, but the issuance of a new judgment *authorizing* the prisoner's confinement. *Id.* at 332. The state court did not issue a new judgment authorizing Patterson's confinement when it granted Patterson's motion to correct his sentence.

11

And the 1998 judgment remains the only order that commands the Secretary to imprison Patterson.

Many ameliorative changes in sentences that state courts might grant as a matter of course, such as the removal of a fine or a restitution obligation, would trigger a new round of federal habeas review under Patterson's proposed standard of "material change." At oral argument, Patterson's counsel stated that orders that remove restitution and fines might be "in a slightly different category" than orders that remove chemical castration because fines and restitution are not part of a prisoner's custodial sentence and cannot be challenged in a habeas proceeding. *See Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009). But whether a challenge to the removed portion of the sentence was initially cognizable in a habeas proceeding is irrelevant to whether the removal of that condition produces a new judgment. Patterson's focus on the magnitude and type of change to the sentence is beside the point. The only question is whether the 2009 order authorizes his confinement.

The dissent argues that, in the wake of our ruling, "all Florida prisoners who obtain a favorable Rule 3.800(a) order striking or vacating part of their initial sentence . . . will simply have the state trial court enter a new judgment," Dissenting Op. at 23, but the dissent cites no authority for this proposition. And it is unclear that Florida law would entitle every prisoner to that remedy. Rule

12

3.800(a) allows a court to correct an illegal sentence "at any time" if the "records demonstrate on their face an entitlement" to relief. This rule encompasses clerical errors, *Carson v. State*, 489 So. 2d 1236, 1238 (Fla. Dist. Ct. App. 1986), which "generally relate back" to the date of initial judgment. *R. R. Ricou & Sons Co. v. Merwin*, 113 So. 745, 746 (Fla. 1927). An order that relates back to an original sentence merely amends the original order and may not entitle the defendant to vacatur of the original judgment and entry of a new one. That Rule 3.800(a) encompasses clerical errors, which relate back, suggests that other modifications under Rule 3.800(a) may also relate back to the original sentencing and would not require a judge to vacate the original sentence and issue a new one. And we know, of course, that the judge in Patterson's case did not do so.

As a practical matter, Patterson's proposed resolution of this appeal might hurt prisoners more than it helps. To be sure, if any change to a sentence triggers another opportunity for federal review, state prisoners would potentially have greater access to the federal writ of habeas corpus. But then state officials would be less willing to agree to sentencing changes that benefit prisoners, and state courts would be more hesitant to approve them. Courts have the discretion to accept a prosecutor's concession, in lieu of reaching the merits, in close cases and in cases where no error occurred. *See Casey v. United States*, 343 U.S. 808, 808 (1952); *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). But Florida's courts

13

"have a constitutional and statutory duty not to accept an inappropriate concession" when it "might be to the detriment of the victims of crime and/or to the people of the State of Florida," *Reed v. State*, 783 So. 2d 1192, 1196 n.2 (Fla. Dist. Ct. App. 2001), *quashed on other grounds*, 837 So. 2d 366 (Fla. 2002), a possibility that would arise more often if a merciful concession required prosecutors to defend and victims to endure a new round of federal habeas review.

The dissent contends that we "seem[] to be saying" that prosecutors and state courts would refuse to correct illegal sentences under clear state law to avoid additional federal habeas review, *see* Dissenting Op. at 26, but that contention constructs a straw man. Nothing in our analysis suggests that prosecutors and state courts would refuse to modify an illegal sentence. Instead, our analysis recognizes that prosecutors may sometimes consent to motions under Rule 3.800(a) even when the prisoner's sentence may not be illegal. Here, the record establishes that the prosecution assented to Patterson's motion to remove chemical castration from his sentence because it viewed chemical castration as a "moot point" in the light of Patterson's life sentence and because contesting the motion was not worth "expos[ing] the victim to the painful remembrance of [Patterson's] actions against her." But we doubt that the prosecution would have so readily assented to Patterson's motion had it known that the resulting order would subject Patterson's victim to a second round of lengthy habeas review.

14

The Antiterrorism and Effective Death Penalty Act gives state prisoners only one opportunity to challenge their sentence in federal court. Patterson wasted that opportunity ten years ago when he filed his first petition late. Patterson would have us hold that any order that changes a prisoner's sentence is a new judgment that triggers a new round of federal review. But the only judgment that matters is the judgment that authorizes Patterson's confinement—the very judgment that Patterson has been attacking for eighteen years and that he wants to attack again. The Act requires that we say "no more." The district court correctly dismissed Patterson's petition as second or successive.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Patterson's petition for a writ of habeas corpus.

ED CARNES, Chief Judge, concurring:

I fully concur in the well-reasoned majority opinion, and write separately only to make clear that this Court does not reach the two questions contained in the second issue that we asked the parties to brief. We stated those questions as follows:

> Should Insignares v. Secretary, 755 F.3d 1273 (11th Cir. 2014), and Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286 (11th Cir. 2007), be overruled insofar as either of them [1] allows a non-detrimental change in a prisoner's sentence to constitute a new judgment under Magwood, or [2] allows a prisoner who obtains a non-detrimental change in his sentence to also challenge his original, undisturbed conviction as though the conviction had occurred at the date of the change in the sentence?

Regardless of the first question, we know from the Magwood opinion itself that the second question was not decided in that case because the Supreme Court's opinion tells us it was not. The Court expressly stated: "This case gives us no occasion to address" whether its reasoning "would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed conviction." Magwood v. Patterson, 561 U.S. 320, 342, 130 S. Ct. 2788, 2802 (2010). In his second or successive application, Magwood had not attempted to challenge his undisturbed conviction, only his new sentence. Id. The Supreme Court did note that "[s]everal Courts of Appeals have held that a petitioner who succeeds on a

16

first habeas application and is resentenced may challenge only the portion of a judgment that arose as a result of a previous successful action." Id. at 342 n.16, 130 S. Ct. at 2802 n.16 (quotation marks omitted) (citing decisions of the Second, Sixth, and Seventh Circuits).

Because Patterson's second or successive habeas application does challenge his conviction, this case might have presented the undisturbed conviction/new sentence issue that Magwood reserved, allowing us to decide whether to overrule our Insignares and Ferreira decisions. It does not, however, because there was no new judgment in this case. As a result, that issue is one for another day.

17

JORDAN, Circuit Judge, joined by WILSON, MARTIN, ROSENBAUM and JILL PRYOR, Circuit Judges, dissenting:

There are legitimate questions about whether *Insignares v. Secretary, Florida Department of Corrections*, 755 F.3d 1273 (11th Cir. 2014), correctly applied *Magwood v. Patterson*, 561 U.S. 320 (2010), as to when there is an intervening judgment under 28 U.S.C. §§ 2244(b) & 2254(b).  But if we are going to leave *Insignares* undisturbed, I "do not see how [that case] and [the majority's decision here] can coexist."  *United States v. Bryan,* 339 U.S. 323, 343 (1950) (Jackson, J., concurring).  As explained in the now-vacated panel opinion:

> A "basic principle of justice [is] that like cases should be decided alike," *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005), and [there is] no meaningful distinction between Mr. Insignares' case and Mr. Patterson's case. Just as Mr. Insignares' initial § 2254 petition was dismissed for untimeliness, so too was Mr. Patterson's initial § 2254 petition. Just as Mr. Insignares filed a motion with the state trial court to correct his illegal sentence under Rule 3.800, so too did Mr. Patterson. Just as the state trial court granted Mr. Insignares' motion to correct, substantively amending a part of the sentence but leaving Mr. Insignares' remaining convictions and total custodial sentences intact, so too did the state trial court here grant Mr. Patterson's motion to correct, substantively vacating a portion of the sentence but leaving Mr. Patterson's remaining convictions and total custodial sentences intact. Just as Mr. Insignares benefitted from the new sentence, so too did Mr. Patterson benefit from the new sentence. And just as the second habeas petition filed by Mr. Insignares asserted claims related to his underlying convictions (and not to the new sentence), so too did the second habeas petition filed by Mr. Patterson assert claims related to his underlying convictions (and not to the new sentence). As in *Insignares*, the state trial court's grant of Mr. Patterson's Rule 3.800 motion and its vacatur of the punishment of chemical castration from the original sentence constituted a resentencing that resulted in a new

18

judgment, even though Mr. Patterson's total custodial term (life in prison) remained the same, and even though the current habeas corpus petition challenges only the underlying convictions.

*Patterson v. Sec'y, Fla. Dep't of Corr.*, 812 F.3d 885, 888–89 (11th Cir. 2016) (some language in brackets added). The majority tries valiantly to explain why *Insignares* does not govern, but its reasons—to the extent one can ascertain them— are unconvincing.

\* \* \* \* \* \* \*

The majority says that, under *Magwood*, the only judgment that authorizes Mr. Patterson's confinement is the original 1998 judgment, which has never been vacated or replaced. *See* Maj. Op. at 9. That, I think, is wrong on a number of levels.

A criminal judgment (even under AEDPA) consists of the conviction and the sentence. *See Burton v. Stewart*, 549 U.S. 147, 156–57 (2007); *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292–93 (11th Cir. 2007). Not only has the Supreme Court emphasized the critical role that the sentence plays in a judgment, dictionaries from the time of AEDPA's enactment confirm this understanding. *See* Barron's Law Dictionary 271 (4th Ed. 1996) (defining "judgment of conviction" as "the sentence in a criminal case formally entered in the clerk's records"); Black's Law Dictionary 842 (6th Ed. 1990) (stating that "'sentence' and 'judgment' are synonymous in a criminal action").

19

Chemical castration is a criminal punishment under Florida law, *see Tran v. State*, 965 So. 2d 226, 229 (Fla. 4th DCA 2007) (holding that chemical castration, which has been characterized by the Florida Legislature as a penalty, "is part of the defendant's punishment and sentence"), and the Rule 3.800(a) order (however one wants to characterize it) eliminates that punishment from Mr. Patterson's sentence. That order constitutes part of Mr. Patterson's sentence because it substantively changes the way that the Department of Corrections can execute the initial judgment. Everyone but the majority recognizes this reality.

\* \* \* \* \* \* \*

Apparently sensing that this first reason is insufficient, the majority pivots, and says that *Insignares* is distinguishable because the state trial court in that case, in addition to issuing a Rule 3.800(a) order, also entered a new judgment. *See* Maj. Op. at 9–10. This, essentially, mirrors the position that Florida took at oral argument:

> **Member of the Court**: . . . I want to know why you think—and there are various possible answers—but I want to know why you think this is not a new judgment. First, you told me it didn't change his confinement, and we talked about that. Now you say that *Insignares* was different and you started on confinement grounds, but now, you say that there was a new piece of paper called a judgment in *Insignares*, which made all the difference in the world. What is the difference between *Insignares* and this case in your opinion?
>
> **Counsel for the State**: In my opinion, in *Insignares*, a new judgment and sentence, that is required by the Florida Department of

20

Corrections to have in order to lawfully have someone in their custody exists in *Insignares. . . .*

**Member of the Court**: So it's . . . the piece of paper called a judgment?

**Counsel for the State:** It is the piece of paper that complies with Florida law that says this is the judgment that gives you the authority to hold this person in custody.

**Member of the Court**: Under that theory . . . even if Mr. Patterson doesn't get relief in this case, someone who is in Mr. Patterson's exact situation tomorrow, gets a sentence of chemical castration vacated pursuant to a 3.800 order, asks the judge to resentence him or her, gets a full resentencing, gets a new judgment minus the sentence of chemical castration—that person has a new judgment?

**Counsel for the State**: That is a new judgment.

**Member of the Court**: So it's the piece of paper that matters?

**Counsel for the State**: It is a piece of paper. It really is.

**Member of the Court**: Got it. Okay. That is your answer? It is the piece of paper that matters.

**Counsel for the State**: That is my answer.

Audio of En Banc Oral Argument at 27:59–29:27.

It is true that there was a new formal judgment in *Insignares*, but that, it seems to me, is irrelevant. First, Florida law does not require that a criminal judgment be in writing. *See Patterson,* 812 F.3d at 890*; Flowers v. State*, 351 So. 2d 387, 389 (Fla. 1st DCA 1977); Fla. R. Crim. P. 3.700. Second, Florida law indicates that Rule 3.800(a) orders can be tantamount to judgments and have the

21

force of law when—as here—they impose a new sentence and end judicial labor. *See Adams v. State*, 949 So. 2d 1125, 1126–27 (Fla. 3d DCA 2007); *State v. Rudolf*, 821 So. 2d 385, 386 (Fla. 2d DCA 2002); *State v. Delvalle*, 745 So. 2d 541, 542 (Fla. 4th DCA 1999). *Accord De La Osa v. Wells Fargo Bank, N.A.*, No. 3D14–1455, 2016 WL 7232272, at *3 (Fla. 3d DCA Dec. 14. 2016) (en banc) (explaining the interchangeability of the terms "order" and "judgment" under Florida law).

This, of course, is why the Florida Department of Corrections acknowledges that it cannot chemically castrate Mr. Patterson. If state officials admit that the Rule 3.800(a) order affects and modifies Mr. Patterson's initial sentence, i.e., judgment, one is left to wonder why the majority thinks that the order amounts to nothing more than the ineffectual and legally insignificant musings of a state trial court.

We have been told, time and again, that AEDPA—in both text and spirit—is meant to respect the way that states administer their criminal justice systems. Here, however, the majority is not concerned about the way that Florida law operates. It ignores Florida law holding that chemical castration is a criminal punishment, and refuses to recognize that under Florida law a Rule 3.800(a) order like the one here can have the force of law. And it relegates to the dustbin the

22

Department of Corrections' concession that, due to the state trial court's order, it cannot chemically castrate Mr. Patterson.  So much for respect.

\* \* \* \* \* \* \*

If this case is all about a piece of paper, then we have wasted valuable time and resources in convening en banc.  If what matters is a formal paper called a judgment, then all Florida prisoners who obtain a favorable Rule 3.800(a) order striking or vacating part of their initial sentence—i.e., their initial punishment—will simply have the state trial court enter a new judgment setting out the current sentence and incorporate the terms of the Rule 3.800(a) order in the new judgment. That sort of a judgment, apparently, will suffice under *Magwood*.

The majority nevertheless suggests that Florida law may not entitle every prisoner who obtains Rule 3.800(a) relief to a new paper judgment.  *See* Maj. Op. at 12–13.  But this suggestion should not be taken seriously, for the majority does not identify a principle of Florida law to support its theory.  It offers only that the correction of a clerical error is an example of a situation in which a change "relates back" to the original sentence so as to not *require* the court to enter a new judgment.  This case, of course, does not involve the correction of a clerical error, so the majority's example is not helpful.

Even the majority does not really believe that this case turns on whether there is a new piece of paper called a judgment, for it provides yet another reason

23

for its holding.  According to the majority, the Rule 3.800(a) order does not affect Mr. Patterson's confinement because it "does not authorize anything."  Maj. Op. at 10.  The majority says this confidently, even though it recognizes that the Florida Department of Corrections must read the 1998 judgment together with the Rule 3.800(a) order to "determine the scope of [Mr.]Patterson's confinement."  *Id.*  In *Magwood*, the Supreme Court rejected the state's argument that custody is the critical concept in determining whether a habeas corpus petition is second or successive, *see* 560 U.S. at 333–34 (explaining that the "judgment" is what matters), yet here the majority seems to give primacy to custody, and bases its decision on whether the Rule 3.800(a) order gives the Department of Corrections the power to confine Mr. Patterson.  I do not know why the majority thinks that the rationale in *Magwood* can be jettisoned like driftwood.

* * * * * * *

The majority analogizes to an order which corrects a clerical error, *see* Maj. Op. at 10–11, which we have indicated does not constitute a new judgment under the Federal Rules of Appellate Procedure.  *See United States v. Portillo*, 363 F.3d 1161, 1165–66 (11th Cir. 2004).  But the majority is setting up the proverbial straw man, because there is no way anyone can say that an order which prohibits the substantive punishment of chemical castration is in any way clerical.

24

Indeed, it is the majority's position that may one day cause a conflict with cases like *Portillo.* Imagine a case in which a Florida court sentences a defendant to a term of 10 years, but then issues a judgment which mistakenly states that the sentence is 100 years. No one notices the error until the defendant has been in custody for 6 years. If the state court issues a new judgment which corrects the clerical error and commits the defendant to the custody of the Department of Corrections for (the correct) 10 years, that will, according to the majority's apparent rationale, constitute a new judgment under *Magwood.* There will be a new piece of paper—the amended judgment—which will be affirmatively worded, i.e., it will give the Department of Corrections the authority to keep the defendant in custody, and that judgment will set out the length of his confinement.

I prefer the panel's approach, which looks to see whether the state court corrects a legal error and enters a new sentence that is substantively different than the original sentence. *See Patterson*, 812 F.3d at 891. It may not be perfect, but it is more faithful to *Insignares* than what the majority is offering.

* * * * * * *

The majority closes by telling us that, "as a practical matter," the approach taken by the panel, and endorsed by Mr. Patterson, "might hurt prisoners more than it helps." Maj. Op. at 13. In and of itself, the majority's prediction about the consequences of today's decision is neither surprising nor inappropriate. Courts

25

often have to consider the practical effects of the principle they are adopting. What is remarkable is the reason the majority believes its decision is prisoner-friendly.

According to the majority, if the panel approach prevails, "then state officials would be less willing to agree to sentencing changes that benefit prisoners, and state courts would be more hesitant to approve them." *Id.* I do not understand. Here, for example, the prosecution conceded error (and the state trial court granted Rule 3.800(a) relief) because Florida law makes it clear that the punishment of chemical castration was improperly imposed. *See Houston v. State*, 852 So. 2d 425, 428 (Fla. 5th DCA 2003).

What the majority seems to be saying is that, in order to preclude a new round of federal habeas corpus proceedings for state prisoners under *Magwood*, state prosecutors may not concede that a sentence has been illegally imposed even though state law on the subject is clear, and that state courts may decline to correct a sentence that is undoubtedly illegal under state law even though it is their duty to do so. In other words, state prosecutors and state courts will bend (or ignore) state law in order to achieve the purportedly desirable goal of limiting the access of state prisoners to further federal habeas corpus review.

The majority's underlying assumption—which I do not share—is as odd as it is disconcerting. *See Patterson*, 812 F.3d at 895 (Haikala, J., concurring) ("The notion that a trial judge would refrain from correcting a sentencing error that all of

26

the parties have acknowledged . . . to avoid a potential habeas petition is repugnant to the judicial office.").  If the majority is right, however, then the trust we place in state courts to adjudicate issues of federal law (both statutory and constitutional) is completely misplaced, and the deference we give them under AEDPA is a colossal and unjustified mistake.

27